IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SAMUEL KIMBRIL,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF OMAHA, a Nebraska Political Subdivision; and CHRISTOPHER GRAY, an Individual,<br><br>　　　　　Defendants. | 8:23CV445<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Defendants' motion to dismiss Plaintiff's Complaint. Filing No. 5. The plaintiff, Samuel Kimbril, brought this action against the defendants, City of Omaha ("the City") and Christopher Gray[1] ("Gray"), in state court asserting claims for violation of right to privacy under the Fourteenth Amendment[2], failure to train, supervise, and discipline in violation of 42 U.S.C. § 1983, as well as state law claims for negligent supervision and retention, and negligent disclosure. Filing No. 1. After removal to this Court, the City and Gray moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Filing No. 5.

**BACKGROUND**

Gray is employed as a police officer by the City. Filing No. 1-1 at 1. On October 13, 2021, from a City of Omaha Police Department computer, Gray accessed information stored on the Nebraska Criminal Justice Information System ("NCJIS") and a sealed

---

[1] It is unclear whether the defendant's name is Christopher GRAY or RAY due to interchangeably using both names by both parties throughout, often within the same filing. As such, the Court will refer to him as Gray as he is listed in the case caption.
[2] The plaintiff also asserts a claim for violation of his Eighth Amendment rights, however because the Eighth Amendment does not apply, the Court will not address this claim for relief.

1

arrest report concerning Kimbril at the request of Cortney Kotzian.  *Id.* at 2.  Gray used his personal cell phone to send Kimbril's booking photo, the NCJIS information, and the arrest report via a text message exchange with Kotzian.  *Id.*  Kotzian then published the information provided by Gray to social media platforms and communicated with reporters on the information she received from Gray.  *Id.*  The publication of the material accessed by Gray caused Kimbril to lose his employment.  *Id.*

Kimbril filed a complaint with the City's police department alleging unauthorized disclosure of confidential information by various individuals.  Filing No. 1-1 at 2.  During the investigation, Gray admitted that the information provided and messaged to Kotzian was not part of an official investigation or within his official duties.  *Id.*  Gray also admitted he violated the police department's rules and regulations when he accessed the NCJIS database for a non-official purpose.  *Id.*

The City, through the Omaha Police Department Internal Affairs unit, found Gray provided unauthorized information to Kotzian in violation of the department's rules and regulations.  Filing No. 1-1 at 2.  At the conclusion of its investigation, the City advised Kimbril, in writing, that his complaint against Gray was substantiated.  *Id.*  As a result of Gray's conduct, the Omaha Police Department suspended and reassigned Gray, and revoked his access to NCJIS for a year.  *Id.*

After submitting a claim for negligence pursuant to the Nebraska Political Subdivision Tort Claims Act, and later withdrawing his claim, Kimbril filed this action in the District Court of Douglas County, Nebraska.  Filing No. 6 at 2.  Kimbril alleged conduct by the City and Gray deprived him of his federal constitutional rights, and sought recovery under 42 U.S.C. § 1983, as well as asserted state claims.  Filing No. 1-1.  The defendants

removed the action to this Court and subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) arguing Kimbril has failed to plead sufficient facts to state a cause of action under § 1983, and Kimbril's state claims are barred by sovereign immunity. Filing No. 6 at 6.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff's obligation to provide the grounds for his entitlement to relief necessitates that the complaint contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Under *Twombly*, a court considering a motion to dismiss may begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusions "can provide the framework of a complaint, they must be supported by factual allegations." *Id.* (describing a "two-pronged approach" to evaluating such motions: First, a court must accept factual allegations and disregard legal conclusions; and then parse the factual allegations for facial plausibility). "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

**Violations pursuant to** 42 U.S.C. § 1983

In Kimbril's First and Second Claims for Relief[3], he seems to allege the City and Gray violated his Fourteenth Amendment right to privacy when Gray provided unauthorized information to Kotzian and accessed the NCJIS database for a non-official purpose. Filing No. 1-1 at 3–5. The defendants argue that Gray's actions in accessing the NCJIS and disseminating Kimbril's sealed records did not violate any federally protected constitutional right; and therefore, Kimbril has failed to state a plausible claim for relief. Filing No. 6 at 2.

To state a claim under § 1983, a plaintiff must allege that the defendant's conduct caused a constitutional violation, and that the challenged conduct was performed under color of state law. *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993). The Fourteenth Amendment provides protection for the personal right of privacy, which "encompasses an individual's interest in avoiding disclosure of personal matters and has been characterized as the right to confidentiality." *Stamm v. Cnty. of Cheyenne, Nebraska*, 326 F. Supp. 3d 832, 852 (D. Neb. 2018) (quoting *Riley v. St. Louis Cnty. of Mo.*, 153 F.3d 627, 631 (8th Cir. 1998)).

A public employee may be sued officially, individually, or both under § 1983. *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). An action under §

---

[3] The allegations in Plaintiff's complaint are labeled as both "claims for relief" and "causes of action." For consistency, the Court will refer to all allegations as "claims for relief."

1983 against an employee in his official capacity is considered to be a suit against the employer only.  *Id.*

A political subdivision generally may not be held vicariously liable for the unconstitutional acts of its employees. See *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  To impose liability on a political subdivision under § 1983, a plaintiff must show that a municipality policy or custom caused the constitutional injury. *Stamm*, 326 F. Supp. 3d 832.

For purposes of § 1983, a decision not to train employees about the duty to avoid violating citizens' rights may rise to the level of an official government policy.  *Id.*  A political subdivision's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 852 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Id.*  "'Only then can such a shortcoming be properly thought of as a city [or county] policy or custom that is actionable under § 1983." *Id.*

> [The] protection against public dissemination of information is limited and extends only to highly personal matters representing 'the most intimate aspects of human affairs.' *Wade v. Goodwin*, 843 F.2d 1150, 1153 (8th Cir. 1988). '[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information.' *Alexander v. Peffer,* 993 F.2d 1348, 1350 (8th Cir. 1993).  To determine whether a particular disclosure satisfies this exacting standard, we must examine the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession.  *Sheets v. Salt Lake Cnty.*, 45 F.3d 1383, 1387–88 (10th Cir. 1995). … 'When the information is inherently private, it is entitled to

5

protection.' *Fraternal Ord. of Police, Lodge No. 5 v. City of Philadelphia*, 812 F.2d 105, 116 (3d Cir. 1987).

> … 'courts have traditionally been reluctant to expand this branch of privacy beyond those categories of data which, by any estimation, must be considered extremely personal.'

*Stamm*, 326 F. Supp. 3d at 852–53 (quoting *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996).

In *Stamm*, the plaintiffs brought an action in state court against law enforcement officers, counties, and city, asserting violation of the right to privacy under the Fourteenth Amendment based on alleged illegal accessing and distribution of their personal information stored on NCJIS. After removal, the defendants' motion to dismiss was granted. Notwithstanding the plaintiffs' argument that they were not claiming a violation of their right to privacy/right to confidentiality based on dissemination of public guilty pleas, but instead their alleged violation involved the procurement and disclosure of non-public, highly personal, intimate, and confidential information, the court found, "Absent any supporting factual allegations to show that Plaintiffs had a legitimate expectation that any NCJIS data concerning them would remain confidential, Plaintiffs' right-to-privacy claim necessarily fails." *Stamm*, 326 F. Supp. 3d 832. The facts alleged by the plaintiffs were "not sufficient to create a plausible inference" that they were deprived of their Fourteenth Amendment rights to protection of such inherently private information. *Id.* at 857.

Similar to the situation presented in *Stamm*, Kimbril argues his claim is not based on disclosure of public arrest records, but rather a disclosure of NCJIS information that had been ordered sealed by the Douglas County District Court. Filing No. 10 at 3. According to Kimbril, he was never convicted of any crime, and any record of his prior

arrest history was no longer a part of the public record pursuant to Neb. Rev. Stat. § 29-3523(3). *Id.*

Just as the plaintiffs in *Stamm,* Kimbril has failed to allege facts that are sufficient to create a plausible inference that he was deprived of his Fourteenth Amendment right to protection of inherently private information. Furthermore, Kimbril has failed to provide a plausible factual basis for concluding the City should be held liable on the Fourteenth Amendment claims that are based on a failure to train Gray. While Kimbril alleges the City "failed to properly train and supervise Omaha Police Department officers", he fails to state the policy or custom of the City that caused the alleged Fourteenth Amendment violation.

Thus, as it stands, Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendants and is subject to dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). However, Kimbril requested leave to file an amended complaint to state additional facts if this Court determines his Complaint fails to state a claim upon which relief may be granted. Filing No. 10 at 4. The Court will therefore grant Plaintiff leave to file an amended complaint to allege facts in support of his claim that the City should be held liable on the Fourteenth Amendment claims of failure to train Gray.

**State Law Claims**

Kimbril's remaining claims for relief, Fourth, Fifth, and Seventh, assert state law tort violations of negligent training, supervision, retention, and negligent disclosure. Filing No. 1-1 at 5–6. The defendants argue the claims are barred pursuant to Neb. Rev. Stat. § 13-910(7) and the doctrine of sovereign immunity. Filing No. 6 at 6.

7

Sovereign immunity prohibits lawsuits against the state or its political subdivisions unless the state has consented to be sued. *McKenna v. Julian*, 763 N.W.2d 384 (Neb. 2009). The Political Subdivisions Tort Claims Act specifies the procedure to bring a suit against a political subdivision and provides a list of claims for which sovereign immunity is not waived. *Id. See also Doe v. State*, 980 N.W.2d 842 (Neb. 2022) (Through the State Tort Claims Act, the legislature has waived the state's sovereign immunity with respect to some, but not all types of tort claims.).

Defendants contend they are entitled to sovereign immunity under § 13-910(7), which exempts the City from the waiver of sovereign immunity for certain specified actions. Filing No. 6 at 7–10. The intentional torts exception provided in § 13-910(7) includes any claim arising out of assault, battery, false arrest, false imprisonment, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. *McKenna*, 763 N.W.2d 384. According to the defendants, Kimbril's alleged tort violations arose from an abuse of process and therefore are barred by sovereign immunity. Filing No. 6 at 10.

Kimbril asserts his complaint does not include allegations for the intentional torts specified in § 13-910(7). Filing No. 10 at 3. He argues, "the Complaint clearly states that Officer Gray [sic] communications with Ms. Kotzian was not part of any official investigation. . . Factual questions remain regarding Officer Gray's access to the NCIJS database, the use of his personal phone, the use of a city computer, safeguards regarding sealed non-public information, and his training." *Id.* at 3–4.

Nebraska does not recognize a common-law duty not to disclose sealed criminal history information. *Doe*, 980 N.W.2d 842. In *Doe*, the plaintiff, who had been previously

8

convicted of a felony and a misdemeanor, received a pardon for the convictions several years later. After receiving the pardons, the plaintiff filed a motion to have his criminal history information sealed pursuant to Neb. Rev. Stat. Ann. § 29-3523(5). The court granted his motion and sealed the criminal history record relating to both pardoned convictions. Later, the plaintiff applied for a job with the Department of Correctional Services ("DCS"). Although he indicated on his application form that he did not have a criminal history, when the DCS requested a criminal history background check, the Nebraska State Patrol ("NSP") provided the plaintiff's criminal history record including information on his previously sealed convictions. The plaintiff was subsequently advised by DCS that he would not be hired because of his criminal history.

Doe filed an action under the State Tort Claims Act against the NSP, DCS, the director of DCS, and unknown employees of the State of Nebraska. The complaint described the cause of action as "Negligent Disclosure and Review of Sealed Records in Violation of Neb. Rev. Stat. Ann. § 29-3523." Doe, 980 N.W.2d at 848. On appeal from the district court's dismissal of the plaintiff's claim, the Supreme Court affirmed the dismissal on sovereign immunity grounds. Id. at 847.

In reaching its conclusion, the court acknowledged the plaintiff was within the class of persons § 29-3523 intended to protect; however, there was nothing to suggest the legislature intended the statute to create private tort liability as the Criminal History Act provided two remedies for any violations of the Act. Doe, 980 N.W.2d at 857. The court further determined that because the plaintiff had not demonstrated a private person would be liable under Nebraska law for the tortious conduct alleged in his complaint, the limited waiver of sovereign immunity provided in the STCA did not apply. Id.

In the present case, to the extent he has alleged a claim for a tort violation, Kimbril's state law claims for relief are barred by the intentional tort exception of § 13-910(7) and sovereign immunity.

Again, as it stands, Plaintiff's Complaint fails to state a claim upon which relief may be granted against Defendants and is subject to dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). However, Kimbril requested leave to file an amended complaint to state additional facts if this Court determines his Complaint fails to state a claim upon which relief may be granted. Filing No. 10 at 4. Accordingly, Kimbril shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently state his § 1983 claims against Gray and the City. In order to create a plausible inference that Kimbril was deprived of his Fourteenth Amendment right to protection of inherently private information, the amended complaint must allege facts describing the information Gray accessed and disclosed to Kotzian. Additionally, the amended complaint must provide a plausible basis for concluding the City should be held liable on the Fourteenth Amendment claims by alleging the specific policy or custom of the City that caused the violation and supporting facts that show the City's failure to train Gray amounted to deliberate indifference to the rights of those with whom Gray came into contact.

**THEREFORE, IT IS ORDERED THAT:**

1. Plaintiff shall have 30 days from the date of this Order to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the Court will result in the Court granting Defendant's Motion to Dismiss, Filing No. 5, and dismissing this case without further notice to Plaintiff.

2. In Plaintiff's amended complaint, Plaintiff shall restate the relevant allegations of the Complaint, Filing No. 1, and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his prior pleadings.

Dated this 6th day of March, 2024.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge